■ STATEN ISLAND RAPID TRANSIT OPERATING AUTHORITY, Respondent, v INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 922 et al., Appellants.—Appeal by defendants from a judgment of the Supreme Court, Kings County, dated February 28, 1977, which, after a nonjury trial, enjoined them from engaging in, causing, instigating, encouraging, or lending support or assistance to any strike, work stoppage or slowdown in the operation of plaintiff's railroad. Judgment affirmed, without costs or disbursements. Plaintiff, the Staten Island Rapid Transit Operating Authority (SIRTOA), is a public benefit corporation established pursuant to subdivision 5 of section 1266 of the Public Authorities Law, and is a subsidiary of the Metropolitan Transportation Authority, charged with the operation of Staten Island's only commuter rail line. SIRTOA is also a "public employer", as defined by the New York State "Taylor Law" (see Civil Service Law, § 200 *et seq.* [Public Employee's Fair Employment Act]). Hence, it is claimed that its employees are legally barred from striking (see Civil Service Law, § 210). (SIRTOA is also a "covered organization" within the meaning of the New York State Financial Emergency Act for the City of New York [L 1975, ch 868], so that its employees are allegedly subject to the wage freeze provisions of that act.) The railroad operated by SIRTOA is a single-line commuter railway operated between Tottenville and the St. George Ferry Terminal in Staten Island. Prior to its acquisition by the City of New York and its subsequent turnover to SIRTOA in 1970, via a lease and operating agreement between the city and SIRTOA, the railroad was owned and operated by a private company which was part of the B & O Railroad system. At one time the B & O system operated a ferry between Tottenville and Perth Amboy, New Jersey, so that the Staten Island railway line was truly a part of an interstate system. At the time of the city's acquisition, the connection between the railway and interstate commerce had dwindled to the operation of one freight train per day over this trackage. Continuation of this service was a condition of the city's takeover. This minimal freight

service is today handled by B & O personnel and equipment and has been declining to the point where there is only one regular customer on Staten Island, which is serviced by a seven-car train making one run per day, five days per week. Since the railroad had originally been part of the B & O system, its employees had traditionally been dealt with by management pursuant to the Railway Labor Act (US Code, tit 45, § 151 *et seq.).* When the city acquired the line, it adopted existing collective bargaining agreements and the employees and SIRTOA have continued to negotiate pursuant to the Railway Labor Act. The employees still participate in the Federal Railroad Retirement System and Unemployment Insurance Act and are covered by the Federal Employer's Liability Act. In addition, SIRTOA operates pursuant to an Interstate Commerce Commission certificate of public convenience and necessity, although it is exempt from many other ICC requirements, and its day-to-day operations are subject to inspection by the Federal Railroad Administration. The instant labor dispute between the parties, which concerns wages, work rules and conditions, has been going on for over two and one-half years. The matter was before the National Mediation Board until December 15, 1976, when the board gave notice that its services had terminated. Arbitration having been rejected, the parties have now fully exhausted the procedures of the Railway Labor Act. Negotiations did, however, continue until January 17, 1977 when, no agreement having been reached, the defendant unions called a strike. A temporary restraining order was issued shortly thereafter. That order was later vacated, and SIRTOA's motion for a preliminary injunction denied by Special Term, but this court granted a stay pending appeal. The appeal was, however, delayed by defendants' removal of the proceeding to a Federal court, which court then remanded it to the State courts on SIRTOA's motion. Thereafter, this court vacated Special Term's order and remanded for an immediate trial so that the parties could develop a more complete record for our review. The stay was continued. We are now presented with an appeal from a judgment, made after trial, enjoining the strike. The single question before us is whether SIRTOA's employees may be enjoined from striking pursuant to the Taylor Law notwithstanding that the Railway Labor Act has been judicially interpreted to permit peaceful primary strikes (see *Railroad Trainmen v Terminal Co.,* 394 US 369). We believe that they may be so enjoined. There is no doubt that when a State or one of its political subdivisions owns and operates a railroad which is directly engaged in interstate commerce, it thereby subjects itself to the commerce power and that Congress can regulate its employment relationships *(California v Taylor,* 353 US 553). The operation of a railroad in interstate commerce is not an integral part of State governmental activities which are protected from congressional impairment by principles of State sovereignty *(National League of Cities v Usery,* 426 US 833, 854, n 18). Nor may it be denied that SIRTOA comes, at least literally, within the coverage of the Railway Labor Act, as it does operate pursuant to an ICC certificate, and its employees have a strong history of bargaining under that act. (It would appear that SIRTOA has never challenged the status of its employees under the Railway Labor Act, but rather has simply continued the *status quo.)* However, it is equally undeniable that SIRTOA is essentially an intrastate passenger or commuter operation, fully akin to the city's rapid transit system. Thus, for example, the SIRTOA fare is the same as the 50¢ fare charged on the city's rapid transit facilities, and the city is equally committed to making up SIRTOA's resulting operating deficit. SIRTOA's operation is in no way comparable to the State-owned switching or terminal railroads held subject

to Federal jurisdiction in *California v Taylor (supra); International Longshoremen's Assn. v North Carolina Ports Auth.* (370 F Supp 33, affd 511 F2d 1007) and *Parden v Terminal Ry. Co.* (377 US 184 [Federal Employers' Liability Act]). The connection between SIRTOA and interstate commerce is extremely tenuous, a fact recognized by the Interstate Commerce Commission, so much so that SIRTOA has been exempted from various provisions of the Interstate Commerce Act. It is not a vital link in the national transportation system, the continued operation of which is important to the national flow of commerce; and the instant labor dispute does not present problems of national or even regional magnitude, which problems would require uniform treatment on a national scale. (Although our determination herein in no way relies thereon, it is of some interest to note that a prior lengthy strike against SIRTOA involving different unions did not extend to the daily freight run.) We do not today hold that SIRTOA's employees are subject to the full panoply of provisions contained in the State's scheme of public employment labor relations. (It might be noted that the State scheme is very similar to that embodied in the Railway Labor Act, while in *California v Taylor [supra],* for example, the State scheme was the very antithesis of Federal policy, not even recognizing the right of public employees to bargain collectively.) Rather, we merely hold that balancing SIRTOA's minimal and tenuous connection to interstate commerce, exemplified by one freight run per day for the convenience of one customer, against the State's direct and compelling interest in preventing strikes by public employees and ensuring the continuation of commuter rail service for thousands of Staten Island residents, it is clear that these public employees may properly be enjoined under the Taylor Law, from striking against SIRTOA as a means of "self help" in their continuing dispute. Defendants' reliance upon *Bus Employees v Wisconsin Bd.* (340 US 383) is misplaced in our view. That case, and *Bus Employees v Missouri* (374 US 74), involved pre-emption of State antistrike laws by the National Labor Relations Act, which is different in many respects from the Railway Labor Act. Moreover, the employees involved were not public employees; and the NLRA specifically excludes such employees from its coverage. Gulotta, P. J., Hopkins, Martuscello, Latham and Cohalan, JJ., concur.