Neal C. **GIBRALTER,** Plaintiff,

v.

The **CITY OF NEW YORK,** Captain **Rock, John Doe One and John Doe Two,** Defendants.

No. 84 CV 0436.

United States District Court, E.D. New York.

June 18, 1985.

---

Zuller & Bondy, New York City, for plaintiff; Thomas L. Bondy, New York City, of counsel.

Frederick A.O. Schwarz, Corp. Counsel of the City of New York, New York City, for defendants; Donald J. Kravet, New York City, of counsel.

## ORDER

McLAUGHLIN, District Judge.

The attached Report and Recommendation of Hon. Shira A. Scheindlin, United States Magistrate, is hereby adopted as the Opinion of this Court. No objections were filed within the time permitted.

It is hereby ORDERED that: 1) plaintiff's claim under 42 U.S.C. § 1981 is dismissed; 2) plaintiff's claim against defendant City of New York under 42 U.S.C. § 1983 is dismissed; 3) the motion of Captain Rock, John Doe I and John Doe II to dismiss claims against them under 42 U.S.C. § 1983 is denied; and 4) discovery in this action is to proceed forthwith under the guidance of Magistrate Scheindlin.

SO ORDERED.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE

SHIRA A. SCHEINDLIN, United States Magistrate.

Plaintiff, Neal D. Gibralter, brings this action pursuant to 42 U.S.C. §§ 1981 and 1983 seeking damages for alleged violations of his civil rights. Specifically, plaintiff alleges that the defendants failed to provide him with a safe prison environment while he was an inmate at the New York City Correctional Institution for Men on Riker's Island ("Rikers Island"). It is further alleged that there exists a *de facto* policy of the City of New York of failing to provide a safe environment for inmates at Riker's Island, and that defendant John Doe II is aware of this policy. Finally, plaintiff alleges that John Doe I witnessed, but did not intervene in a fight between plaintiff and another inmate in which plaintiff claims he was injured. This case was referred to me by the Honorable Joseph M. McLaughlin for a Report and Recommendation on defendants' motions for summary judgment.

## I. FACTUAL BACKGROUND

On March 19, 1982, Gibralter was interned at Riker's Island. Plaintiff alleges that since his internment he has been the victim of a series of assaults and robberies. Plaintiff further asserts that many of these attacks were motivated by "racist reasons" and that prison officials purposely placed him in the particular housing area where racial attacks were likely to occur.

Riker's Island has an established grievance resolution program that is outlined in the orientation booklet that every inmate receives upon entering the prison. If an inmate complains about his living conditions or desires help in resolving a problem, "interview slips" are provided to the inmate so that he may request consultation and assistance. If an inmate breaks the

rules of the prison, by fighting or taking another's property for example, a "notice of infraction" is issued by a prison official. Upon issuance of such a notice, the inmate goes before a disciplinary board that determines his punishment, if any. A Captain or supervisory officer, at his discretion, may place an inmate in administrative segregation until the hearing. It is also a policy of the prison to provide medical treatment if needed or requested.[1]

Plaintiff alleges that he has been the victim of a series of eight assaults, beginning with the day after his internment and culminating in the incident of November 6, 1982. Of these eight assaults, plaintiff alleges that five were reported to prison officials, although prison records indicate that only four were reported. The first incident occurred on March 20, 1982, when plaintiff was reprimanded for fighting with another inmate, named Ramirez. Plaintiff pleaded guilty at a disciplinary hearing and received medical treatment for a minor wrist injury. Plaintiff alleges that he had subsequent fights with inmates on August 15, October 1, October 10 and October 30. Although he believes he received medical treatment following the incident of October 10, the institution has no records of any treatment. Plaintiff does not allege that he reported these incidents to any prison official.[2]

On August 1, 1982 plaintiff alleges that he was assaulted by a prison guard when he asked permission to use the washroom. Department of Corrections records reveal that at a disciplinary hearing on July 21, 1982, plaintiff was found guilty of refusing a direct order of a prison official and was given a five day punitive segregation. Medical records reveal that plaintiff first

claimed that he was pushed against a wall, and later that he was punched by the officer. Medical treatment was found not to be necessary.[3]

On November 6, 1982, plaintiff and Ramirez were involved in a second fight. Plaintiff asserts that other inmates held him down while Ramirez cut his face and neck with a razor blade. The weapon Ramirez used was a blade fashioned from a BIC disposable razor. Plaintiff alleges that Ramirez had concealed the blade in his toothbrush. Plaintiff sustained superficial lacerations to the left side of his face and was treated with a face suture. Captain Rock testified that it was prison policy that inmates' lockers be searched every day, although he was not certain when the last search was on or before November 6, 1982. Ramirez claimed, in a report of the incident prepared by prison authorities, that plaintiff struck him with a lock, and that he slashed plaintiff in self-defense. He claimed that he later flushed the razor down the toilet.

Captain Rock testified that he interviewed the two inmates after the fight of November 5 and disciplined both men by issuing infraction notices against them.[4] He determined, however, that it was not necessary to order either inmate transferred to another housing area. He did offer a transfer to both men, but neither accepted.[5]

Captain Rock testified that he was informed of the incident on November 6, although he had heard about it earlier from his colleagues in the institution. No corrections officer witnessed the assault, although two inmates submitted written statements in which they claimed to have witnessed plaintiff strike Ramirez with a

1. Exhibit 7. Rules of the Disciplinary Board.

2. *See* Exhibit 2, Plaintiff's Response to Defendant's Interrogatories. Answer to question 10.

3. Plaintiff has not produced any witnesses or other evidence to support his assertions.

4. Exhibit 1. Deposition of Captain Rubin Rock; Exhibit 3, Notice of Infraction to Inmate dated 11/5/82.

5. Exhibit 2. Answer to question 13.
 Question: "After the November 5, 1982 incident with Hector Ramirez, but prior to the alleged incident of November 6, 1982, did plaintiff request to be segregated from Hector Ramirez?"
 Answer: "No."

lock. Plaintiff did receive an infraction notice for the November 6 incident.

The Department of Corrections has no record of a request by plaintiff for either a transfer or an opportunity to speak with any corrections officials. Plaintiff does allege in his original complaint that he had requested to be transferred prior to November 5, but that those requests were denied.

## II. MOTION FOR SUMMARY JUDGMENT

To prevail on their motions, defendants must prove "that there is no genuine issue as to any material fact," and that they are "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Harlee v. Hagen*, 538 F.Supp. 389, 393 (E.D.N.Y.1982). The court must "resolve all ambiguities and draw all reasonable inferences" against defendants. *American International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir.1981). In addition, all facts asserted by the plaintiff, "if supported by affidavits or other evidentiary material, are regarded as true" for the purpose of this motion. 10A Wright & Miller & Kane, *Federal Practice and Procedure* § 2727 (Civil 2d 1983). Nonetheless, the party who opposes the motion cannot discharge his burden by alleging legal conclusions, nor is he entitled to a trial only on the basis of a hope that he can produce some evidence at that time. *See United Transportation Union v. Long Island Railroad and Metropolitan Transportation Association*, 509 F.Supp. 1300 (E.D.N.Y.) *rev'd on other grounds*, 634 F.2d 19 (2d Cir.1980), 455 U.S. 678, 102 S.Ct. 1349, 71 L.Ed.2d 547 (1982).

## A. Plaintiff's Claim under 42 U.S.C. § 1981

■ To sustain a claim under § 1981, plaintiff must show purposeful racial discrimination. *General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). The discrimination complained of must have occurred in connection with one of several activities specified in § 1981.[6]

Although inartfully pleaded, plaintiff is asserting a violation of his right "to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains ... and exactions of every kind, and no other." 42 U.S.C. § 1981.

■ Plaintiff, though white, may sue for racial discrimination under § 1981. *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). In order to sustain his constitutional challenge, however, plaintiff must show *purposeful* discrimination. A showing of disparate impact to establish discriminatory intent is not sufficient. *General Building Contractors Association*, 458 U.S. at 390, 102 S.Ct. at 3149. In order to show purposeful intent a court may consider purposeful intent, proof of departures from the normal procedural sequence, history of discriminatory actions, and other relevant factors. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264–68, 97 S.Ct. 555, 562–65, 50 L.Ed.2d 450 (1977).

■ Plaintiff fails to allege any facts which would tend to prove purposeful discrimination by the prison through its officials. His only allegation is his personal belief that alleged assaults by fellow inmates were motivated by racial enmity. Even assuming this to be true, it is at most evidence of disparate impact. It is therefore respectfully recommended that de-

**6.** 42 U.S.C. 1981 states that,

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

fendant's motion for summary judgment be granted with respect to that part of plaintiff's claim that sets forth an action under § 1981.

### B. Plaintiff's Claim Under 42 U.S.C. § 1983.

 Attacks and physical assaults by government officials may constitute violations of constitutionally protected rights. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir.1981); *Johnson v. Glick*, 481 F.2d 1028, 1032–33 (2d Cir.), *cert. denied* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Government officials may be held liable under § 1983 either for overt acts that are illegal and harmful or for a failure to carry out their duties. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *cert. denied* 434 U.S. 974, 98 S.Ct. 530, 54 L.Ed.2d 465 (1977); *Doe v. New York City Dep't of Social Services*, 649 F.2d 134, 141 (2d Cir.1981), *cert. denied,* —— U.S. ——, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Holmes v. Goldin*, 615 F.2d 83 (2d Cir. 1980). The issue here is whether prison officials may be held liable for attacks suffered by one inmate at the hands of another inmate, where it is alleged that the officials, by their failure to provide a safe environment for the injured plaintiff, violated that plaintiff's constitutional rights.

### 1. The City of New York

 A municipality cannot be held liable under § 1983 solely on a *respondeat superior* theory. *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, a plaintiff who asserts a § 1983 claim against a municipal entity must allege that the complained of action "unconstitutional[ly] implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" *id.* at 690, 98 S.Ct. at 2035–36, or that the allegedly unlawful action results from government custom, "even though such a custom has not received formal approval through the body's official decision-making channels." *Id.* at 691, 98 S.Ct. at 2036.

The Second Circuit has added a further gloss on the *Monell* rule, stating that

> to hold a city liable under sec. 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: 1) an official policy or custom that 2) causes the plaintiff to be subjected to 3) a denial of a constitutional right.

*Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983).

 An official policy or custom can be inferred from a municipality's failure to act as well as from positive actions. *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir.), *cert. denied* 499 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). Nevertheless, mere failure to supervise employees or to provide proper training is not actionable unless the failure is so severe as to constitute "gross negligence" or "deliberate indifference" to the deprivation of the plaintiff's rights. *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir.), *cert. denied* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Leite v. City of Providence*, 463 F.Supp. 585, 590–91 (D.R.I.1978).

 Of the eight assaults alleged by plaintiff, including the incidents of November 5 and 6, 1982, plaintiff admits that he did not report three of the incidents to prison officials. Plaintiff requested medical treatment on four of these occasions and does not claim that his treatment was inadequate. On one occasion, plaintiff was found guilty of fighting and given a disciplinary infraction notice. On three occasions, plaintiff pleaded guilty.

Of the seven alleged robberies, plaintiff produces no witnesses or documentation. The assailant was "unknown" on five occasions, and there is no allegation that prison officials were informed of the incidents.

Even reading these allegations in a light most favorable to plaintiff, as required in this summary judgment motion, it is difficult to find that prison officials acted with gross negligence or deliberate indifference.

Assuming, *arguendo*, that plaintiff has met this evidentiary burden, he must still establish that some official policy or custom of the city caused the constitutional violation. It is at this point that plaintiff's claim fails.

Riker's Island does not have an official policy that encourages fighting among inmates. On the contrary, the prison has an established grievance resolution program, which provides inmates with the opportunity to air complaints through official channels. To hold the city liable in the present action, plaintiff must establish the existence of a custom on the part of prison employees that receives at least tacit approval by city officials.

Plaintiff does not allege that the official grievance resolution channels were unavailable to him. Nor does he allege any facts that would lead to a reasonable inference that city officials knew or should have known that plaintiff had been in a number of fights since his internment at Riker's Island. In fact, there is no record that plaintiff ever made a formal complaint to prison officials concerning his belief that he was being subjected to unsafe living conditions.

Plaintiff does not allege a persistent pattern or practice by city officials that might amount to a "custom or usage" within the meaning of *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168, 90 S.Ct. 1598, 1614, 26 L.Ed.2d 142 (1970) (court rejected petitioner's attempt to prove a "custom" because petitioner failed to prove that *other inmates* were subjected to an unsafe environment). The Second Circuit has stated that a policy cannot ordinarily be inferred from a single incident of illegality. *Turpin v. Mailet*, 619 F.2d at 202; *see also Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir.1974). If the single incident is unusually brutal or egregious, such as a beating administered by a group of municipal employees, an inference may be drawn that the unlawful action was attributable to inadequate training or supervision. *See Owens v. Haas*, 601 F.2d at 1242.

Here, plaintiff alleges a series of incidents, none of which were committed by city employees. The question, then, is whether proof of these incidents would be sufficient to establish an official custom. *Turpin* is instructive in this regard. There, the district court found a police officer guilty of using excessive force in his arrest of a teenage boy. The boy, Turpin, was awarded $3,500 in damages. Soon after the award was ordered, another police officer arrested Turpin, this time for "disorderly conduct." Turpin alleged that the City of New Haven's Board of Police Commissioners, in failing to discipline the first officer (he was in fact given a promotion) and being aware of a growing animus toward Turpin, encouraged the violation of his rights by the police. The Second Circuit found that "Turpin's proof of an official policy of harassment ... boiled down to the Board's failure to discipline [the first officer]." *Turpin*, 619 F.2d at 203. It further determined that, as a matter of law, "[a]lthough the Board's failure might suggest a slight disregard for Turpin's rights, it falls far short of constituting deliberate indifference to those rights ..." *Id.*

Here, plaintiff's allegations "boil down" to John Doe I's failure to break up the fight between plaintiff and Ramirez on November 5, 1982. City officials could not have known of a pattern of constitutional abuses because there is no evidence that such a pattern existed. Plaintiff alleges individual incidents that cannot be considered sufficient to establish a de facto policy of the City of New York. Because plaintiff does not allege facts sufficient to suggest the necessary causal link between individual incidents of violence and the City's official decision-making bodies, it is respectfully recommended that the City's motion for summary judgment be granted.

2. *Captain Rock and John Doe II*

The Eighth Amendment's prohibition against cruel and unusual punishment places a responsibility upon prison officials to protect inmates within the pris-

on system from violent assaults by other inmates. *Martin v. White*, 742 F.2d 469 (8th Cir.1984); *Redmond v. Baxley*, 475 F.Supp. 1111 (E.D.Mich.1979); *Penn v. Oliver*, 351 F.Supp. 1292 (E.D.Va.1972). Because prison officials, as custodians of persons placed in the care of the government, are charged with an affirmative duty of care, see *Knell v. Bensinger*, 522 F.2d 720, 725 (7th Cir.1975), (prison officials must be "sensitive and alert to the protections afforded prisoners by the developing judicial scrutiny of prison conditions and practices"), the non-performance of such custodial duties gives rise to a § 1983 cause of action. *Estelle v. Gamble*, 429 U.S. at 105, 97 S.Ct. at 291.

In *Estelle*, a prisoner brought an action for damages against public officials based on inadequate medical treatment. The Court held that to state a cause of action for deprivation of the right to be free from cruel and unusual punishment, a plaintiff must allege more than negligence; the "prisoner must allege acts and omissions sufficiently harmful to evidence *deliberate indifference* to serious medical needs." *Id.* at 106, 97 S.Ct. at 292. (emphasis added). The Supreme Court has indicated that this standard denotes a "species of recklessness or callous neglect." *Redmond v. Baxley*, 475 F.Supp. at 1118 (interpreting language in *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976).[7]

Four years after *Estelle*, the Fourth Circuit adopted a lesser standard. "Given ... [a] pervasive and unreasonable risk of harm, negligence by prison officials in their performance of their duty of care is a violation of the constitutional right [to be free from cruel and unusual punishment] and actionable under 1983." *Withers v. Levine*, 615 F.2d 158, 162 (4th Cir.), *cert. denied*, 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980).[8]

Subsequent to the *Withers* decision, the Supreme Court confronted the issue of whether mere negligence will support a claim for relief under 1983. In *Parratt v. Taylor*, 451 U.S. 527, 533, 101 S.Ct. 1908, 1911, 68 L.Ed.2d 420 (1980), the Court concluded that a finding of negligence could support a 1983 claim. *Id.* at 535, 101 S.Ct. at 1912. Accordingly, the Court indicated that there are only two essential elements to any 1983 action: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Id.*

The *Parratt* opinion, however, is not controlling here. First of all, the comments regarding the negligence standard are merely dictum, as the case was dismissed because petitioner had an adequate remedy at state law. Secondly, the case involved a prisoner's due process rights under the Fourteenth Amendment rather than rights protected by the Eighth Amendment. Justice Powell in his concurring opinion affirmed that *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), is still good law. In *Estelle*, according to Justice Powell, the Court held that "['] deliberate indifference to a prisoner's serious illness or injury ['] on the part of prison officials is sufficient to constitute an ['] *infliction* ['] of cruel and unusual punishment under the

---

7. Although *Estelle* seemed to limit the required showing of deliberate indifference to cases where cruel and unusual punishment was alleged, Chief Justice Burger, dissenting in *Procunier v. Navarette*, 434 U.S. 555, 566–568, 98 S.Ct. 855, 862–863, 55 L.Ed.2d 24 (1978), indicated that liability under 1983 will *only* be imposed where defendant's mental state can be characterized as deliberate indifference.

8. In *Withers*, because of a widespread threat of physical abuse by other inmates, prison officials had a policy of segregating inmates who were considered vulnerable to sexual attack. The plaintiff was such an individual but was inadvertently housed in a dangerous cell block. Prison officials had access to plaintiff's files yet failed to alert the guards to any need for special care. Presented with these facts, the Fourth Circuit devised a three part test which, if met, would be sufficient to find a prison official liable under 1983. There had to be: 1) a pervasive risk of harm 2) to an identifiable group of prisoners, 3) in a case in which prison officials failed to exercise reasonable care. *Id.*

eighth amendment." *Parratt*, 451 U.S. at 547 n. 3, 101 S.Ct. at 1919 n. 3. (emphasis added). Justice Powell reasoned that the word *infliction* in the language of the Eighth Amendment indicates that a mental element is necessary before a violation will be found.

The Eighth Circuit has recently followed this standard. In a case similar to plaintiff's, inmates brought a 1983 suit against the prison superintendent, alleging that he failed to take reasonable steps to protect them from sexual assaults by other inmates. *Martin v. White*, 742 F.2d 469 (8th Cir.1984). The Court of Appeals ruled that "prison officials may be liable where they are 'deliberately indifferent to ... a prisoner's constitutional rights, either because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates.'" *Id.* at 474 (citations omitted).

In a recent case, the Eastern District of North Carolina applied a similar test. "[A]lthough supervisory officials cannot be held liable on the basis of their employer-employee relationship, liability attaches where their own action or inaction amounts to gross negligence or deliberate indifference and is the proximate cause of the constitutional violation." *Spell v. McDaniel*, 591 F.Supp. 1090, 1110 (E.D.N.C.1984). This precise issue has not been presented in this circuit. However, several cases provide guidance.

In *McKennon v. Nassau*, 538 F.Supp. 737 (E.D.N.Y.1982), an inmate brought a 1983 action against the county for the failure of prison officials to take steps to remedy the increased hazards of assaults by fellow inmates that result from an overcrowded prison. Judge George C. Pratt denied plaintiff's motions for judgment notwithstanding the verdict after jury had found deliberate indifference on the part of prison employees but failed to find the foreseeability required to prove causation.

In *Doe v. New York City Dep't of Social Services*, 649 F.2d 134 (2d Cir.1981), city officials were charged with 1983 liability for failure to protect a child under their care who was abused in a foster home. In reversing a judgment in favor of defendants, the court indicated that when omissions are alleged rather than affirmative actions, a court must find, in addition to a finding of deliberate indifference, that the omissions were "a substantial factor leading to the denial of a constitutionally protected liberty or property interest." *Id.* at 141 (citing *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)).

■■■ Plaintiff has the burden of proving that defendants acted with either gross negligence or deliberate indifference. Although repeated acts of negligence can be evidence of indifference, *Doe*, 649 F.2d at 142, gross negligence is a higher standard. Ultimately, it is a question of the defendant's state of mind and whether he "can meaningfully be termed ['] culpable [']." *Turpin v. Mailet*, 579 F.2d 152 at 166 (2nd Cir.1978).

■■■ The court must be cautious in deciding a motion for summary judgment in an action that involves the state of mind of the defendant, because much will depend on the credibility of the witnesses. *See* 10A Wright & Miller & Kane, *Federal Practice and Procedure* § 2730 (Civil 2d 1983). Accordingly, this Court must determine whether a reasonable interpretation of the facts exists from which a jury might find that Captain Rock and John Doe II acted with gross negligence or deliberate indifference.

Plaintiff alleges that he suffered a series of assaults, robberies and harassments at the hands of other inmates. He claims that these assaults created a pervasive risk of harm and that both Captain Rock and John Doe II knew or should have known of this risk. In addition, plaintiff alleges that Captain Rock acted unreasonably in not segregating plaintiff after the incident of November 5 and in failing to properly supervise John Doe I.

Whether these actions or inactions occurred through gross negligence or deliberate indifference are questions of fact appropriately left to a jury. Summary judg-

ment is a drastic remedy and should be applied sparingly. *See Egelston v. State University College at Geneseo*, 535 F.2d 752, 754 (2d Cir.1976); *Auletta v. Tully*, 576 F.Supp. 191, 194 (N.D.N.Y.1983), *aff'd* 732 F.2d 142 (2d Cir.1984); *Sobel v. Yeshiva University*, 477 F.Supp. 1161, 1166 (S.D. N.Y.1979). Therefore, it is respectfully recommended that Captain Rock's and John Doe II's motions for summary judgment be denied.

3. *John Doe I*

■ Because there is an unresolved issue of fact with respect to John Doe I's conduct as it relates to the incident of November 5, 1982, it is respectfully recommended that summary judgment be denied with respect to plaintiff's action against him. There is sufficient evidence from which a jury might conclude that 1) John Doe I's failure to intervene in the fight of November 5, 1982 was an act of gross negligence and 2) was a substantial factor in the violation of plaintiff's constitutional right to be protected from physical assault.

III. CONCLUSION

Because plaintiff has alleged specific acts and omissions by Captain Rock, John Doe I and John Doe II which, if committed with gross negligence or deliberate indifference, would constitute a violation of plaintiff's Eighth Amendment right to be free from the infliction of cruel and unusual punishment, it is respectfully recommended that Captain Rock's, John Doe I's and John Doe II's motion for summary judgment be denied. Because plaintiff has failed to allege specific facts that demonstrate an official policy or custom on the part of the City of New York to violate plaintiff's constitutional rights, it is respectfully recommended that the City of New York's motion for summary judgment be granted.

A copy of this Report and Recommendation is being mailed today to all parties, who are hereby advised that objections to the report may be served and filed with the district court, with a copy to me, within ten (10) days.