**George JEMZURA, Plaintiff,**

v.

**PUBLIC SERVICE COMMISSION, New York State Electric & Gas and Employees, Governor George Pataki, John O'Mara, individually, Catherine Dudley, individually, Eugene Connell, individually, Cheryl Callahan, individually, John Draghi, individually, Diane Simpson, individually, Dennis Vacco, individually, Defendants.**

**No. 3:97–CV–39.**

United States District Court, N.D. New York.

April 14, 1997.

---

George Jemzura, Sherburne, pro se.

Dennis C. Vacco, Office of the Attorney General, Department of Law, Albany (James B. McGowan, Assistant Attorney General, of counsel), for State Defendants.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

The plaintiff, George Jemzura, has filed an action concerning New York State Electric & Gas Corp.'s ("NYSEG") refusal to provide an electrical line extension on land adjacent to property owned by his brother. The plaintiff claims that NYSEG's denial of electrical service deprived him, and his brother, farming

and business opportunities including a multi-million dollar spring water enterprise.[1] This action is the latest in the last 20 years of *pro se* actions and proceedings brought by the plaintiff, his brother, or both before administrative, state, and federal courts upon the same underlying facts and issues.[2] The plaintiff filed this § 1983 claim asserting nine separate claims alleging that the defendants denied the plaintiff equal protection and procedural due process under the Fourteenth Amendment. Therefore, the plaintiff seeks relief in the form of monetary damages, court orders directing Governor Pataki and Attorney General Vacco to enforce the law, and punitive damages in the amount of $1,000,000. Finally, the plaintiff filed a motion that the undersigned recuse himself because of alleged prejudice in this case.

Before the Court is the motion filed on behalf of defendants Pataki and Vacco to dismiss this Complaint in its entirety as against them. The plaintiff has filed a "cross-motion" asserting that he is suing defendants Pataki and Vacco in their individual capacity and not their official capacity, and requesting leave of Court to replead his Complaint, as of right, after plaintiff has an opportunity for discovery.

## H. DISCUSSION

### A. Motion for Recusal

■ The plaintiff moves for recusal under 28 U.S.C. §§ 144 and 455. Under § 144, a district court judge shall recuse himself when the judge "has personal bias or prejudice either against him or in favor of any adverse party...." Under 28 U.S.C. § 455(a), a district court judge must recuse himself "in any proceeding in which his impartiality might reasonably be questioned." The two sections

are complementary, even when the only ground for recusal alleged is bias or prejudice. *See United States v. Sibla*, 624 F.2d 864, 867 (9th Cir.1980). The Second Circuit has determined that the grounds for disqualification are the same under both statutes. *See Apple v. Jewish Hosp. & Medical Ctr.*, 829 F.2d 326, 333 (2d Cir.1987).

■ The substantive inquiry to determine bias or prejudice is whether "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality could reasonably be questioned." *United States v. Lovaglia*, 954 F.2d 811 (2d Cir. 1992). The burden is on the moving party to demonstrate an "objectively reasonable basis for questioning a judge's impartiality." *In re I.B.M. Corp.*, 45 F.3d 641, 644 (2d Cir.1995). This Circuit has explained that, under 28 U.S.C. § 455(a), recusal is appropriate only when the "opinions formed by a district judge ... display a 'deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Groden v. Random House, Inc.*, 61 F.3d 1045, 1053 (2d Cir.1995), *quoting Liteky v. U.S.*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Importantly, "the test here is not the subjective feelings of the defendant as to the court's alleged bias, but whether facts have been presented, assuming their truth, that would lead a reasonable person to infer that bias or prejudice existed, thereby foreclosing impartial judgment." *Markus v. United States*, 545 F.Supp. 998, 1000 (S.D.N.Y.1982), *aff'd* 742 F.2d 1444 (2d Cir.1983).

■ The plaintiff argues that the undersigned must recuse himself because of past decisions made against the plaintiff and his

---

1. It appears the plaintiff has standing in this case because he owns a substantial mortgage against his brother's property, the subject property of the request that NYSEG install electrical service. With the plaintiffs interest and alleged lost business opportunities relating to that same property, the plaintiff appears to allege a personal injury fairly traceable to the defendants' allegedly unlawful conduct. *See Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984).

2. In two previous actions in this District, Raymond Jemzura, the plaintiffs brother, was the named plaintiff. *See Jemzura v. NYSEG*, 91–CV–0843 (Oct. 19, 1992 and Sept. 23, 1994); *Jemzura v. NYSEG*, 95–CV–1012 (Aug. 17, 1995). However, George Jemzura has been named plaintiff along with his brother in numerous administrative and state court actions. Moreover, the plaintiff herein has played an active role throughout the 20 years of continuous litigation on this matter, whether named as a party or not, *e.g.*, factual witness.

brother which allegedly suggest bias.[3] The law is clear the bias or prejudice that results in recusal "must be extrajudicial and not based upon in-court rulings." *In re I.B.M. Corp.*, 618 F.2d 923, 929 (2d Cir.1980). This requires evidence that the judge formed "an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). In relation to the motion before the Court, it is clear that the plaintiff's recusal motion is motivated by this Court's prior decisions in actions brought by the plaintiff's brother, Raymond. There is no case law to support recusal in such a situation.[4] In addition, there are no facts even remotely suggesting bias by the undersigned. If the fact that a judicial officer ruled against a party, or a party's relative, is grounds for recusal, then, at least with respect to highly litigious individuals, there could soon be no judges with jurisdiction to hear subsequent proceedings.

Accordingly, this Court finds that the plaintiff has failed to make the requisite showing that the undersigned displays a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1053 (2d Cir.1995), *quoting Liteky*, 510 U.S. at 540, 114 S.Ct. at 1149–50. The plaintiff has failed to show any basis on which a reasonable person could conclude that the undersigned's impartiality could reasonably be questioned. *See Lovaglia*, 954 F.2d at 815.

 One further development merits discussion. Following the filing of this action, the plaintiff filed a notice of appeal from a prior decision by this Court.[5] As part of that notice, the plaintiff sent a letter to the undersigned demanding $50 to reimburse him for filing papers, threatening to sue the undersigned and his law clerks, and notifying the undersigned that the plaintiff was pursuing judicial misconduct proceedings against the undersigned. The Court notes that the general rule is that recusal is not appropriate merely because a party has sued or threatens to sue the judge presiding over that party's litigation. *See United States v. Taylor*, 569 F.2d 448, 450 (7th Cir.1978); *United States v. Grismore*, 564 F.2d 929, 933 (10th Cir.1977).[6] The logic behind the rule is to prevent "judge-shopping" by litigants.

Therefore, the undersigned denies the motion for recusal, and now addresses the motion to dismiss defendants Pataki and Vacco.

## B. Motion to Dismiss Parties

Defendants Pataki and Vacco move to dismiss themselves from this action based on sovereign immunity and the plaintiffs failure to state a claim underfed. Fed.R.Civ.P. 12(b)(6).

### 1. Eleventh Amendment Sovereign Immunity

 The Eleventh Amendment provides sovereign immunity to unconsenting states sued in federal court. *See Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). The Amendment itself states:

> The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI. This immunity applies to unconsenting States in suits "brought in federal courts by her own citizens as well as by citizens of another State."

---

**3.** These decisions include *Jemzura v. Mugglin. et. al.*, 96–CV–0816 (Dec. 24, 1996), amended (Jan. 18, 1997), and *Jemzura v. Bulsiewicz.*

**4.** In fact, the Court warned Raymond Jemzura that the filing of additional feckless actions with this Court relating to the alleged failure of NY-SEG to provide electrical services would be viewed by this Court as possible grounds for sanctions. Thus, the Court looks suspiciously upon the instant Complaint as a less than transparent attempt by the Jemzuras to evade judicial

sanction and provide sustenance to a seemingly endless stream of litigation.

**5.** The plaintiff filed an appeal to this Court's decision in *Jemzura v. Mugglin.*

**6.** This line of cases has been cited in *United States v. Jones*, 1989 WL 58544, at *5 (W.D.N.Y. June 2, 1989); *Raffe v. Citibank, N.A., et. al.*, 1987 WL 10825, at *2 (E.D.N.Y. May 1, 1987).

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). This bar exists whether the relief sought is legal or equitable. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

■ Sovereign immunity is also granted to State officers who are sued in their official capacity since a suit brought against "a state official in his official capacity is not a suit against the official but rather a suit against the official's office." *Gonzales v. Wing,* 167 F.R.D. 352, 355 (1996), *quoting, Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Thus, as discussed below, sovereign immunity would bar this suit against defendants Pataki and Vacco in their official capacity as governor and attorney general, respectively.

The plaintiff seeks an Order from this Court directing defendant Pataki to remove officers and employees of the Public Service Commission (PSC) and to protect the plaintiff from an alleged conspiracy. The plaintiff also requests this Court to direct defendant Vacco to investigate a complaint connected to this matter allegedly referred to the Office of the Attorney General.

The Second Circuit has interpreted the Supreme Court to hold that the Eleventh Amendment prohibits federal courts from ordering state officials to conform their conduct to state law. *See Eng v. Coughlin,* 858 F.2d 889, 896 (2d Cir.1988), (*quoting, Pennhurst,* 465 U.S. at 106, 104 S.Ct. at 911). The Court stated that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst,* 465 U.S. at 106, 104 S.Ct. at 911.

There has been no showing that New York State has waived its immunity to suit; nor has Congress enacted legislation specifically overriding the State's immunity to suit. *See Trotman v. Palisades Interstate Park Comm.,* 557 F.2d 35, 39–40 (2d Cir.1977) (stating that New York has not waived its

sovereign immunity for a § 1983 violation); *Mullin v. P & R Educ. Servs.,* 942 F.Supp. 110, 111–12 (E.D.N.Y.1996). Moreover, the plaintiff fails to set forth facts that, even if taken to be true, would establish violations of any federal law.

■ On the contrary, the Governor's duty to remove PSC officials, such as the commissioner, is discretionary. *See* New York Public Service Law § 4(1) (McKinney's) (stating that "the Chairman of the Public Service Commission serves in such capacity at the Governor's pleasure."); Public Service Law § 4–b (stating that "[t]he governor *may* remove any public service commissioner ... for inefficiency, neglect of duty or misconduct in office...."). As for investigations, the plaintiff fails to assert any constitutional or federal statutory requirement which compels these state officials to meet obligations which would only arise under State law. Thus, if the defendants are sued in their official capacity, the § 1983 claim is barred by the doctrine of sovereign immunity.

### 2. Claims Asserted Against the Defendants in Their Individual Capacity

■ Plaintiff has argued in response that the two defendants acted outside the scope of their authority, and thus, committed § 1983 violations in their individual capacity. This is a thinly veiled attempt by the plaintiff to inject life into claims that clearly would have been barred by sovereign immunity if brought against the defendants in their official capacity. *See Will,* 491 U.S. at 71, 109 S.Ct. at 2312. As discussed below, this attempt to sue the defendants in an unofficial capacity is unsuccessful.

■ It is well established that a defendant's personal involvement in the alleged constitutional violation is a prerequisite to the imposition of damages in a § 1983 claim. *See, e.g., Monell v. Department of Soc. Servs.,* 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978); *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060 (2d Cir. 1989). The Second Circuit recognizes four ways in which a supervisory official may be personally involved: (1) he or she may have directly participated in the infraction or be

directly involved through ordering that the action be taken; (2) he or she may fail to remedy a wrong after learning of the violation; (3) he or she may have created or allowed a policy to continue under which the violation occurred; or (4) he or she has been grossly negligent in managing the subordinates who caused the violation. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986); *Mullin,* 942 F.Supp. at 112. The plaintiff does not set forth any facts showing that defendants Pataki or Vacco were personally involved in NYSEG's denial of extending electrical service on his brother's property. There are no facts that defendant Pataki knew of the private dispute between the plaintiff and NYSEG and the PSC. In addition, there are no facts that either defendant directly participated in this matter, or established a policy permitting unlawful practices to continue.

Therefore, defendants Pataki and Vacco, should be dismissed from this case, despite plaintiff's efforts to sue them in their "individual" capacity.

### 3. Rule 12(b)(6) Motion

Notwithstanding the above discussion, the Court will examine the merits of the defendants' dismissal motion as it relates to whether the Complaint states a claim.

Pursuant to a motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), the Court examines the legal sufficiency of the claim. *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991). The rule in the Second Circuit favors courts not to dismiss the complaint for failure to state a claim *"unless* it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991) (citation omitted) (emphasis added).

■ Such a case for dismissal is warranted here. The plaintiff seems to allege a conspiracy against him and his brother, Raymond. The plaintiff asserts in his Complaint that defendant Pataki has a duty to protect the plaintiff from conspiracy and to remove guilty officers and employees of the PSC, but failed to do so. The plaintiff also asserts that defendant Vacco has a duty to investigate this alleged deprivation of electrical power, but failed to do so. These claims are all based on § 1983 violations of the plaintiffs civil rights. The Second Circuit has held that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987); *see also Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990) ("It is incumbent on a plaintiff to state more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights.").

■ The plaintiff relies on vague allegations and conclusions of a conspiracy without pleading any overt acts or providing a basis in fact for his claim. As a result, the plaintiff pleads a legal theory of conspiracy without offering any proof of these defendants' personal involvement in or connection to this matter. Even a *pro se* Complaint must be dismissed if it contains "only conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights...." *Zemsky v. City of New York,* 821 F.2d 148, 151 (2d Cir.1987); *see also Hall v. Dworkin,* 829 F.Supp. 1403, 1412 (N.D.N.Y.1993) (holding that a § 1983 action must contain more than broad based, conclusory statements).

■ Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a), the plaintiff must state, at a minimum, "the purpose of or any overt acts perpetrated by defendants which reasonably relate to the claimed conspiracies." *Zemsky,* 821 F.2d at 151. Plaintiff Jemzura's claim fails to satisfy this pleading requirement. As this Court has stated, "To merely state in a conclusory fashion that a conspiracy exists is wholly insufficient, and to allow such a lax pleading requirement would do violence to even the liberal language of Rule 8(a)." *Hall,* 829 F.Supp. at 1413.

Moreover, the plaintiff fails to allege a violation of his federally protected rights. *See Baker v. McCollan,* 443 U.S. 137, 140, 99

S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979) ("The first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'") The plaintiff claims he has been denied "equal protection and procedural due process" under the Fourteenth Amendment. The plaintiff has not alleged, and the Court cannot identify, any process which he is or was due. As for the equal protection claim, the plaintiff has not alleged the existence of purposeful discrimination to support such a claim. *See Hall*, 829 F.Supp. at 1413.

Given the cursory and conclusory allegations contained in the complaint against defendants Pataki and Vacco, this Court finds that the plaintiff failed to state a claim against defendants Pataki and Vacco.

## C. Motion to Amend the Complaint

■ The general procedure is when a Complaint is dismissed pursuant to Rule 12(b)(6) and the plaintiff requests permission to file an Amended Complaint, that request should ordinarily be granted. *See Ricciuti*, 941 F.2d at 123, citing, *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991) and *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988). The Second Circuit stated that the Court should not deny leave to file a proposed Amended Complaint unless the same rigorous standard for dismissing a Complaint—that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"—is met. *Ricciuti*, 941 F.2d at 123 (citation omitted). The Court added that "[t]his principle should be applied with particular strictness when the plaintiff seeks to file an Amended Complaint charging a violation of his civil rights." *Id.* (citations omitted).

■ In the plaintiffs cross-motion, he requests an opportunity to replead his Complaint. Assuming the plaintiff is requesting an opportunity to amend his Complaint to include, in some way, defendants Pataki and Vacco, this Court denies leave to file such an Amended Complaint because it appears beyond doubt that the plaintiff cannot prove facts to support any claim against defendants Pataki and Vacco either in their official or individual capacity.

## D. Rule 11 Sanctions

### 1. Procedural Requirements

Pursuant to Federal Rule of Civil Procedure 11, as amended in 1993, an attorney, law firm, or party may be subject to sanctions for violation of Rule 11 upon the initiative of a party by motion, or by the court by its own initiative. Fed.R.Civ.P. 11(c). The Rule makes clear that the Court "[o]n its own initiative, ... may enter an order describing the specific conduct that appears to violate subdivision (b) [of Rule 11] and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto." Fed.R.Civ.P. 11(c)(1)(b).

Under Rule 11, "[a] sanction imposed for violation of this rule shall be limited to what is sufficient to *deter* repetition of such conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(2) (emphasis added). "[T]he sanction may consist of, or include, sanctions of a nonmonetary nature, [or] an order to pay a penalty into court...." *Id.* "Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims...." *Id.* Therefore, the Rule allows this Court to impose sanctions on the plaintiff upon meeting the procedural requirements set forth in the Federal Rules.

### 2. Basis for Sanctions

■ Rule 11 sets forth the conduct that forms the basis for the imposition of sanctions. *See* Fed.R.Civ.P. 11(b). Relevant to this case, the party must bring, to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, "the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed.R.Civ.P. 11(b)(2). In the present case, the plaintiff continues to bring feckless and frivolous litigation connected to NYSEG's decision not to extend electrical service for the plaintiff. Even though the plaintiff's brother filed the previous actions in this District, this lawsuit arises from the same set of facts. The Court recognizes the

plaintiffs disguise of changing the plaintiff in order to bring this claim again.[7] However, the plaintiff has played a central role in bringing repetitive and frivolous lawsuits in this matter to the courthouse door, and has received warnings about filing additional actions in this matter.

In a previous action in the Northern District, Judge Scullin warned:

> The *Jemzuras* are therefore put on notice that if they file any future actions in this District that seek the installation of electrical transmission lines to their home, or which claim that the Jemzuras' constitutional rights have been violated by a party as a result of such party's failure to effectuate such installation, the Jemzuras *shall* be subject to monetary and other sanctions as provided for in Fed.R.Civ.P. 11.[8]

The plaintiff, his brother, or both continue to file a stream of litigation in the federal and state courts. In this Court's Dec. 24, 1996 Memorandum–Decision & Order, the Court warned "against the filing of additional feckless motions or actions relating to the failure of NYSEG to provide the relief sought in the many actions comprising the family tree of litigation culminating in the present action in this Court." This Court further warned, "Such would be viewed by this Court as vexatious and frivolous, meriting the imposition of sanctions pursuant to Fed.R.Civ.P. 11."

The Raymond Jemzura was served with the Dec. 24, 1996 Memorandum–Decision & Order before George Jemzura filed this action on Jan. 10, 1997. The Jemzuras continue to file motions and commence actions relating to NYSEG's alleged failure despite their frivolous and feckless nature, and despite warnings from judges in this District. The Court will not continue to be the Jemzuras' bully pulpit. Permitting their conduct to continue wastes the time and resources of the Court and of all those whom the Jemzu-

ras choose to serve with the latest version of their Summons and Complaint.

The Court is mindful that the plaintiff proceeds *pro se,* and as a *pro se* litigant is entitled to a certain latitude. *See, e.g., McDonald v. Doe,* 650 F.Supp. 858, 861 (S.D.N.Y.1986). However, the plaintiff and his brother have pursued numerous claims connected to the failure of NYSEG to provide the relief sought here, all of which have been denied.[9] Based on the repeated baseless litigation by the Jemzuras relating to the matter complained of in the instant case, particularly in the face of judicial warnings that continuing such conduct would result in sanctions, the Court has determined that warnings will not suffice. Accordingly, the Court finds that a fine of two hundred fifty ($250.00) dollars to be paid to the Court, by the plaintiff, for deposit into the *pro bono* fund of the district, is an appropriate sanction. Pursuant to Rule 11, the plaintiff is ordered to show cause why this Court should not impose such a sanction.

## I. CONCLUSION

For the foregoing reasons, the plaintiffs motion for recusal is DENIED, and the Defendants' motion to dismiss this action against defendants Pataki and Vacco is hereby GRANTED. It is further ORDERED that the plaintiff submit to this court, within twenty (20) days of the filing of this Order, in writing, an affidavit not to exceed ten (10) pages in length, and therein to show cause why the plaintiff has not violated subsection (b) of Rule 11, and why this Court should not impose the sanction of two hundred fifty ($250.00) dollars set forth herein.

**IT IS SO ORDERED.**

---

7. In fact, the plaintiff attempted to file an Amended Complaint in this action to name Raymond Jemzura as an additional plaintiff. This Court rejected the Amended Complaint for failure to comply with Local Rule 15.1.

8. *Jemzura v. NYSEG,* 95–CV–1012 (Aug. 17, 1995) (emphasis added).

9. In addition to three Northern District Court Actions, the Jemzuras have commenced more

than 20 different legal proceedings connected to this matter. As a result, the state courts have barred any further action related to this electrical installation matter, and have sanctioned the Jemzuras for their continuing pattern of bringing new lawsuits on the same issues. *See Jemzura v. Mugglin,* 207 A.D.2d 645, 616 N.Y.S.2d 104 (3d Dept.1994).