David **DAVIS**, Plaintiff,

v.

Victor **GOODE**, et al., Defendants.

No. 94 CV 2876(CLP).

United States District Court, E.D. New York.

Jan. 9, 1998.

David Davis, Bronx, NY, pro se.

Dennis Vacco, Attorney General of State of New York, New York City by Richard Hamilton, for Defendants.

*MEMORANDUM AND ORDER*

POLLAK, United States Magistrate Judge.

On June 17, 1994, plaintiff *pro se*, David Davis, filed a complaint against various professors and members of the Academic Standing Committee (the "Committee") of the City University of New York ("CUNY") School of Law (the "Law School"), seeking injunctive and declaratory relief and monetary damages for alleged violations of his civil rights in connection with his grade in the course entitled "Responsibility for Injurious Conduct I" ("RIC"), which plaintiff attended at the Law School in the fall of 1992. On November 1, 1995, Magistrate Judge Robert Levy issued a Report and Recommendation recommending that plaintiff's claims for injunctive and declaratory relief and for alleged violations of his right to due process under the Fourteenth Amendment be dismissed. The Report also recommended that the defendants' motion to dismiss plaintiff's equal protection claims be denied. On November 20, 1995, Judge Levy's Report was adopted by the District Court in its entirety.

By Notice of Motion dated August 29, 1997, defendants moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56(e), on the grounds that there are no genuine issues of material fact in dispute and that summary judgment should be entered as a matter of law. On September 3, 1997, pursuant to the consent of the parties, the case was reassigned to the undersigned for all purposes.

*Factual Background*

The relevant facts as alleged in plaintiff's complaint are set forth in detail in Judge Levy's Report and Recommendation dated November 1, 1995, with which familiarity is presumed. For purposes of this motion, it is undisputed that plaintiff was admitted in 1992 as a student at CUNY Law School, pursuant to a settlement agreement entered into by the Law School and plaintiff which resolved the race discrimination claims raised by Mr. Davis in the case of *Davis v. Halpern*, 768 F.Supp. 968 (E.D.N.Y.1991). During the fall semester of 1992, plaintiff enrolled in RIC I, taught by Professor Sidney Harring, a defendant in this case and a former defendant in *Davis v. Halpern*. (Compl. at ¶¶ 1, 7, 12; Defs.' 3(g) Stmt. ¶¶ 4, 5). Due to the fact that a large number of students who took the final exam in the RIC I course received failing grades, Professor Harring was asked by the Law School to review the exams a second time and reduce the number of failing grades. (Compl. ¶ 34; Defs.' 3(g) Stmt. ¶¶ 9, 10). Although the parties dispute the exact number of students who initially failed the exam,[1] it is undisputed that a certain number of students who had initially failed the exam were successful in their grade appeals to Professor Harring. (Compl. ¶ 35; Defs.' 3(g) Stmt. ¶ 11).

It is also undisputed that after learning of his grade, Mr. Davis wrote several articles, which appeared in two CUNY Law School student publications, criticizing the grade appeal process and accusing Professor Harring of showing favoritism in his grading procedure. (Compl.¶¶ 16, 35–36).

On May 25, 1993, plaintiff submitted a written grade appeal to Professor Harring, accusing the professor of retaliation for plaintiff's decision to name Professor Harring as a defendant in the *Davis v. Halpern* case. (Compl. ¶ 37; Defs.' 3(g) Stmt. ¶¶ 15–16). Professor Harring denied plaintiff's grade appeal, and thereafter, on June 3, 1993, the Academic Standing Committee, having reviewed plaintiff's examination, confirmed that his RIC grade would not be changed. (Compl. ¶ 8; Defs.' 3(g) Stmt. ¶ 17).

Between June 3 and June 10, 1993, plaintiff complained to Dean Victor Goode that he had never filed an appeal with the Commit-

---

1. Defendants assert that forty-six students initially failed, including Mr. Davis (Defs.' 3(g) Stmt. ¶ 11), while plaintiff apparently contends that the number was actually thirty-eight. (*See* Levy Report at 4 n. 3).

tee and that he never received a written explanation from Professor Harring denying his grade appeal (Compl.¶¶ 9, 13). Thereafter, plaintiff received a written determination and in September 1993, he was then permitted to file an appeal from the written determination to the Committee. (Compl.¶ 20). This appeal was also denied. (Compl.¶ 57, 63).

It is undisputed that after the successful prosecution of an Article 78 proceeding in New York State Supreme Court by another student, Walter Janneck (Compl.¶ 23), and a further investigation by the Law School into the RIC grading process, Mr. Davis, along with twenty-one other students, was given a "pass" grade. (Bryant Aff. ¶¶ 6–9; Levy Report at 6 n. 7). Plaintiff ultimately graduated from the Law School in January 1996. (Bryant Aff. ¶ 10).

Following the order of the district court adopting Judge Levy's Report of November 1, 1995, the only claims that survive are plaintiff's claims for compensatory damages of $100,000 from each defendant and $100,000 in punitive damages from each defendant, based on the alleged violations of his First Amendment rights and his right to equal protection under the Fourteenth Amendment. Defendants now move for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, raising four arguments: 1) plaintiff's claims are moot because he received a passing grade and was allowed to graduate; 2) the complaint fails to state a claim for retaliation; 3) the Eleventh Amendment bars suit against the state defendants in their official capacities; and 4) the defendants Hom, Cicero, Calvo, Barnett–Carter, McConnel, Bilek, and Fields had no personal involvement in the alleged deprivation of plaintiff's rights.

Plaintiff has filed papers in opposition to the motion arguing first, that the issues of mootness and the sufficiency of the retaliation claim have already been addressed and decided adversely to defendants by Judge Levy; that the defendants are being sued for monetary damages in their individual capacity; and that pursuant to Rule 56(f), plaintiff needs additional discovery before he can proceed to respond to the other issues in the defendants' motion.

## Discussion

### A. Summary Judgment Motion Standard

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, *see Egelston v. State University College,* 535 F.2d 752, 754 (2d Cir. 1976); *Gibralter v. City of New York,* 612 F.Supp. 125, 133–34 (E.D.N.Y.1985), the court should not grant summary judgment unless it is clear that all of the elements have been satisfied. *See Auletta v. Tully,* 576 F.Supp. 191, 194 (N.D.N.Y.1983), *aff'd.* 732 F.2d 141 (2d Cir.1984). In addition, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

Once the moving party discharges its burden of proof under Rule 56(c), the party opposing summary judgment "has the burden of coming forward with 'specific facts showing that there is a genuine issue for trial.'" *Phillips v. Kidder, Peabody & Co.,* 782 F.Supp. 854, 858 (S.D.N.Y.1991) (quoting Fed.R.Civ.P. 56(e)). However, Rule 56(e) "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256. Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247–48 (emphasis in original).

In recently reversing a grant of summary judgment, the Second Circuit noted that "the

trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 65 (2d Cir.1995) (quoting *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994)).

## B. Mootness

Defendants argue that plaintiff's complaint should be dismissed for lack of jurisdiction, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, because plaintiff's claims regarding his RIC I grade and the grade appeal process are moot. Specifically, they argue that since plaintiff passed the course and was permitted to graduate from the Law School, his claims that he received a failing grade and suffered a violation of his right to equal protection during the appeal process are no longer justiciable.

 This very issue was addressed by Judge Levy in his November 1, 1995 Report. As Judge Levy correctly noted, "[t]he Second Circuit has held repeatedly that claims for damages or other monetary relief automatically avoid mootness in civil cases." (Levy Report at 10) (citations omitted). Here, the only thing that has changed since defendants' original motion was filed in 1995 is that Mr. Davis has since graduated from CUNY Law School. That alone does not extinguish any right that Mr. Davis may have to pursue his right to monetary damages against CUNY Law School for these past alleged violations of his constitutional rights. He has not withdrawn his claims for monetary relief, and therefore, his claims are not moot. *See, e.g., Beyah v. Coughlin,* 789 F.2d 986, 988–89 (2d Cir.1986); *Patrick v. LeFevre,* 745 F.2d 153, 156 n. 2 (2d Cir.1984).

Accordingly, defendants' motion for dismissal on grounds of mootness is denied.

## C. Retaliation Claim

Defendants next argue that the complaint should be dismissed because it fails to allege adequately facts sufficient to demonstrate a deprivation of constitutional rights or to state the specific details as to the time, place, and effect of the alleged agreement to retaliate against plaintiff for pursuing his rights.

Again, this same argument was directly addressed by Judge Levy in his November 1995 Report, where he held:

Here, construing all reasonable inferences in plaintiff's favor, the complaint alleges that members of the Academic Standing Committee treated him differently from the other failing students in Professor Harring's RIC I class in the way they applied the otherwise neutral grade appeal procedure, and that such different treatment was motivated by an intent to punish him for exercising his First Amendment right to freedom of expression. Accordingly, to the extent the complaint seeks redress for violations of plaintiff's Fourteenth Amendment equal protection rights, it states a claim upon which relief can be granted.

(Levy Report at 12–13).

 This Court is exceedingly troubled by defendants' insistence on raising arguments already ruled upon by this Court. A review of the papers submitted in connection with this motion reveals that defendants have already addressed these arguments as motions to dismiss; they have not even attempted to couch this argument or the argument on mootness in summary judgment terms, with affidavits demonstrating that there are no issues of material fact in dispute with respect to Mr. Davis' claims. Instead, the affidavit and 3(g) Statement that were submitted by defendants are silent with respect to the key issues raised here—namely, whether Mr. Davis' treatment with respect to his RIC I grade and the appeal process were the result of discriminatory treatment or the product of retaliation for his assertion of his rights in the *Halpern* case. As noted above, the moving party has the burden of showing that there are no material facts in dispute, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256, and where, as here, this Court has not been presented with any evidence from the moving party, the motion must be denied. *Id.* at 254.

Accordingly, defendants' motion to dismiss for failure to state a claim of retaliation is denied.

### D. Eleventh Amendment Immunity

Defendants' third argument is that the complaint should be dismissed because the Eleventh Amendment bars suit against the Law School and its faculty members in their official capacity.

Under the Eleventh Amendment, an unconsenting state is afforded immunity from suit in federal court. *See Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Jemzura v. Public Serv. Comm'n*, 961 F.Supp. 406, 411 (N.D.N.Y. 1997). The law is clear that CUNY is considered an arm of the State of New York because any judgments against CUNY would be paid for out of the State's treasury, and therefore, CUNY enjoys Eleventh Amendment immunity from claims for monetary damages. *See Moche v. City Univ.*, 781 F.Supp. 160, 165 (E.D.N.Y.1992), *aff'd without opinion*, 999 F.2d 538 (2d Cir.1993). It is undisputed that the Eleventh Amendment prohibits an award of monetary damages against state officials—in this case, the CUNY Law School faculty and members of the Academic Standing Committee—when sued in their official capacity. *See Papasan v. Allain*, 478 U.S. 265, 278, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citations omitted); *Davis v. Halpern*, 768 F.Supp. 968, 984 (E.D.N.Y.1991).

However, it is clear from plaintiff's complaint that he does not seek damages from either CUNY or CUNY Law School, nor have these entities been named as defendants in the complaint. With respect to the named individuals, it is equally clear from Judge Levy's prior Report, dismissing plaintiff's claims for injunctive and declaratory relief against the defendants—the only claims alleged against the defendants in their official capacities (Compl. at 2)—that the plaintiff's claims for monetary damages from these individuals in their individual capacities are the only claims left to be decided. Plaintiff's complaint makes it perfectly clear that he is seeking damages from each of these defendants in their individual capacity only. (Compl. ¶¶ 26, 52, 59, 66, 70).

Defendants have not argued that they enjoy Eleventh Amendment immunity for acts committed in their individual capacity, and a review of the complaint demonstrates that plaintiff has alleged personal involvement by the named individuals. It is well-established that a prerequisite to imposing monetary damages upon an individual in a Section 1983 action is proof that the individual is personally involved in the alleged constitutional violation. *See, e.g., Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065–66 (2d Cir.1989) (citations omitted). In *Williams v. Smith*, the Second Circuit set forth four ways in which a supervisory official may be personally involved: 1) by directly participating in the violation or by ordering the violative action to be done; 2) by failing to remedy a wrong upon learning of it; 3) by creating or permitting a policy under which the violation occurred; or 4) by being grossly negligent in supervising the individuals who committed the violation. 781 F.2d 319, 323 (2d Cir.1986); *see also Jemzura v. Public Serv. Comm'n*, 961 F.Supp. at 412–13.

Here, as set forth below in more detail, plaintiff's complaint alleges that each of the named defendants, including Professor Harring and Victor Goode, personally took action which contributed to or constituted a violation of plaintiff's rights.[2] Whether plaintiff can establish facts sufficient to demonstrate that the defendants were acting in their individual and not their official capacities remains to be seen, but once again, defendants have presented no evidence to sustain their burden of showing the absence of a material issue of fact with respect to these claims.

### E. The Personal Involvement of Defendants Hom, Cicero, Calvo, Barnett–Carter, McConnel, Bilek, and Fields

Defendants' final argument is that plaintiff's claims against defendants Hom, Cicero, Calvo, Barnett–Carter, McConnel, Bilek, and Fields should be dismissed because they were not personally involved in a constitution

---

**2.** See *infra* at pp. 89–91.

deprivation. It is unclear from defendants' papers whether they seek to dismiss plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or whether they are moving for summary judgment under Rule 56. At one point, defendants argue that "[p]laintiff's allegations fail to specify how the state defendants were personally involved in the alleged deprivation of [Davis'] constitutional rights." (Defs.' Mem. at 10). Later, however, they assert that "[p]laintiff has provided no specific facts" to support his claim of personal involvement and that "summary judgment [should be granted] in their favor as there are no allegations or evidence ..." to support the claim. (*Id.* at 11).

First, to the extent that the motion is construed to be a motion to dismiss pursuant to Rule 12(b)(6), this Court recommends that the motion be denied. In order to state a valid claim under Section 1983, the plaintiff must allege that the defendants, acting under color of state law, deprived the plaintiff of a right guaranteed by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Katz v. Klehammer*, 902 F.2d 204, 206 (2d Cir.1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Peavey v. Polytechnic Institute*, 775 F.Supp. 75, 77–78 (E.D.N.Y. 1991), *aff'd.* 969 F.2d 1042 (2d Cir.), *cert. denied*, 506 U.S. 922, 113 S.Ct. 341, 121 L.Ed.2d 257 (1992)). The law is clear that in a Section 1983 case, that there must be a showing that each of the defendants was personally involved in the alleged constitutional deprivation of plaintiff's rights. *See, e.g., McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Mukmuk v. Commissioner of the Dep't of Correctional Servs.*, 529 F.2d 272, 276 n. 5 (2d Cir.), *cert. denied*, 426 U.S. 911, 96 S.Ct. 2238, 48 L.Ed.2d 838 (1976). Liability may not be premised on the doctrine of *respondeat superior* alone. *See Al–Jundi v. Estate of Rockefeller*, 885 F.2d at 1065. Thus, where the complaint fails to allege how the defendant violated the law, a motion to dismiss should be granted. *See Morabito v. Blum*, 528 F.Supp. 252, 262 (S.D.N.Y.1981).

In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. *See Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994); *see also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). "In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to the facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). The complaint may be dismissed only where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

However, it is well-settled that in order to survive a motion to dismiss, a civil rights complaint must contain "more than mere conclusory allegations." *Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir.1988) (citing *Ostrer v. Aronwald*, 567 F.2d 551 (2d Cir. 1977); *see also Neustein v. Orbach*, 732 F.Supp. 333, 346 (E.D.N.Y.1990) (holding that a complaint under Section 1983 must contain "more than naked improbable unsubstantiated assertions without any specifics"). It must, in fact, contain "specific allegations of fact which indicate a deprivation of constitutional rights." *Neustein v. Orbach*, 732 F.Supp. at 346 (citations and internal quotations omitted). While the allegations of the complaint are to be liberally construed in *pro se* civil rights cases, and a *pro se* plaintiff's complaint is generally held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), complaints have been dismissed where the *pro se* litigant has asserted a claim without supporting facts. *See, e.g., Thomas v. Beth Israel Hospital Inc.*, 710 F.Supp. 935, 942 (S.D.N.Y.1989); *Wade v. Carey*, 503 F.Supp. 25, 26 (S.D.N.Y.1980).

■ Mindful of the rule that the complaint of a *pro se* litigant should be liberally construed in his favor, *see Haines v. Kerner*, 404 U.S. at 520, plaintiff's complaint will be reviewed to determine whether the plaintiff has sufficiently stated a cause of action or, if given an opportunity to amend, plaintiff can plead a set of facts that would entitle him to relief against any of the named defendants.[3] A review of the complaint demonstrates that plaintiff's allegations against the named defendants, while less detailed as to some, satisfy the requirements for specificity when reviewing a *pro se* complaint under Rule 12(b)(6).

■ With respect to defendant Sharon Hom, plaintiff's complaint alleges that Hom interviewed the plaintiff in August 1985 when he appeared for admission and she informed him of her awareness of the lawsuit he had instituted on June 3, 1985 against CUNY. (*Davis v. Halpern*, 85 CV 2052). He further alleges that she was the deciding vote to deny admission to plaintiff for the September 1985 term of the Law School and that she was later added as a defendant in the *Halpern* case. Plaintiff further alleges, on information and belief, that defendant Horn was a member of the Academic Standing Committee at the time that it considered and denied both grade appeals relating to plaintiff's RIC I grade, and that she read the two articles published by plaintiff challenging the appeal process. He alleges that defendant Hom, along with defendants Goode, Cicero, Calvo, and Barnett-Carter then "conspired by having exparte [sic] documents submitted by Harring" regarding the second grade appeal and that she retaliated against the plaintiff for naming her as a defendant in *Halpern* and for writing the articles. (Compl.¶ 49).

With respect to defendants Cicero and Calvo, plaintiff's complaint alleges that they were also members of the Academic Standing Committee when the first grade appeal was voted on and rejected in May 1993. The complaint further alleges that they had received plaintiff's earlier March 4, 1993 letter, challenging the appeal and threatening "to turn to another forum" to get a fair hearing. (Compl.Ex. 9). The complaint further alleges that defendants Cicero and Calvo attended a meeting in March 1993 where plaintiff objected to the appeal process and that they read the two articles written by plaintiff in the student newspaper. In retaliation and "as a punishment" for expressing their views, plaintiff's complaint alleges that Cicero and Calvo received *ex parte* communications from Professor Harring and denied plaintiff's second grade appeal. (Compl.¶ 57).

With respect to defendant Sharon Barnett-Carter, the complaint alleges, upon information and belief, that she was also on the Committee, received plaintiff's March 4, 1993 letter, denied his first grade appeal, and read the two articles. She is also alleged to have received *ex parte* written communications from Professor Harring and voted against plaintiff's second grade appeal as retaliation.

With respect to defendants Joyce McConnel, Mary Lu Bilek, and Dave Fields, plaintiff's complaint alleges that they were all members of the Committee when the vote to deny plaintiff's grade appeal was taken on May 4, 1993; that they were aware of Professor Harring's alleged favoritism in raising the RIC I grades of certain students; and that they voted to deny plaintiff's "non-existent" grade appeal "to punish plaintiff from writing articles in the student newspapers challenging the unconstitutional grade appeals process in effect at the law school." (Compl.¶ 69).

Construing the allegations in the light most favorable to plaintiff, as this Court must on a motion to dismiss, this Court finds that plaintiff's *pro se* complaint sufficiently alleges facts necessary to state a claim against each of the named individual defendants. Accordingly, it is respectfully recommended that defendants' motion to dismiss

---

3. As the court in *Salahuddin* noted, when a complaint is dismissed, the court "normally grants leave to file an amended pleading that conforms to the requirements of Rule 8," 861 F.2d at 42, and that under Rule 15(a), " 'leave to amend shall be freely given when justice so requires,' " (quoting Fed.R.Civ.P. 15(a)). *See also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Thus, it is generally considered "an abuse of discretion to deny leave to amend when dismissing a nonfrivolous original complaint on the sole ground that it does not constitute the short and plain statement required by Rule 8." *Salahuddin v. Cuomo*, 861 F.2d at 42.

the claims against defendants Hom, Cicero, Calvo, Barnett–Carter, McConnel, Bilek, and Fields be denied.[4]

▊ Moreover, if defendants' motion is construed to be a motion for summary judgment under Rule 56, defendants have failed to carry their burden of presenting affidavits or other evidence to support their claim that no material issues of fact exist as to the personal involvement of these individual defendants. Accordingly, to the extent this is intended to be a motion for summary judgment, it is respectfully recommended that the motion be denied.

Even if defendants' papers were considered sufficient to support a motion for summary judgment, plaintiff argues that in order to respond to defendants' motion for summary judgment, he needs certain additional discovery, specifically answers to interrogatories.

▊ Rule 56(f) of the Federal Rules of Civil procedure provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

This rule "allows a summary judgment motion to be denied, or the hearing on the motion to be continued if the non-moving party has not had an opportunity to make full discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking to assert this Rule must demonstrate by affidavit four elements: 1) the facts sought by the discovery and how they will be obtained; 2) how the discovery sought will demonstrate a material issue of fact; 3) the efforts made to obtain the facts previously; and 4) why that effort was unsuccessful. *See Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 422 (2d Cir.1989).

In his affidavit, plaintiff has explained the information he needs through responses to interrogatories which he served after the close of discovery. The information sought relates to the knowledge and discussions among the members of the Academic Standing Committee at or around the time of the denials of his grade appeals. These interrogatories are aimed at discovering the extent to which each of the named individuals was aware of and discussed with others the plaintiff's claims in *Davis v. Halpern*, and whether they read and discussed the articles published in the *Brief* and the *Prendre*. In addition, the discovery he seeks is designed to further establish the animus that Mr. Davis alleges was the motivation behind the actions taken with respect to his RIC I grade. Accordingly, plaintiff seeks an order, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, denying defendants' mo-

4. In this motion, defendants do not seek dismissal of the claims against defendants Goode and Harring. Indeed, based on a review of the allegations, this Court finds that the complaint is sufficient to allege a cause of action against each of them. With respect to Victor Goode, the complaint alleges that Goode, in retaliation for Davis' critical newspaper articles and May 4, 1993 letter to the Committee, reviewed Davis' non-existent grade appeal, signed the letter to plaintiff informing him that his grade appeal was rejected, and in fact chaired the Committee. The complaint further alleges that Goode had several conversations with Davis during which Davis protested that he had not filed a written grade appeal prior to the Committee's first denial, to which Goode responded that the failing grade would not be changed. Plaintiff avers that after receiving a letter from plaintiff copied to the district judge presiding in *Davis v. Halpern*, in-

forming Goode that the Committee violated Davis' due process rights, Dean Goode conspired with Harring to send Davis a backdated letter from Harring declining to change plaintiff's grade. Finally, the complaint alleges that Goode, aware of the letter to the district judge, and in order to "cover up the attempt by the Committee to punish plaintiff for exercising his First Amendment rights" (Compl.¶ 20), granted plaintiff the next grade appeal, in connection with which, Goode had *exparte* communications with Harring.

With respect to Sid Harring, the complaint alleges that Harring retaliated against plaintiff for naming him as a defendant in *Davis v. Halpern* and for exercising his First Amendment right to publically criticize the grade appeal system by failing Davis on his RIC exam and then refusing to change the failing grade to a passing one.

tion and allowing him additional discovery on this issue.

In their papers in response, defendants argue that plaintiff has had sufficient opportunity to obtain the discovery information that he needs and that his reasons for requesting the information are based on sheer speculation as to what information he may discover. Based on a review of the file, it is not clear to this Court that prior to the date of the April 3, 1997 conference, plaintiff was given a deadline to submit interrogatories in this case. Instead, discovery up to that point was focused on plaintiff's requests for documents in this and the other cases pending before this Court. While plaintiff clearly should have propounded these interrogatories prior to the September 18, 1997 conference, nevertheless, given his *pro se* status, this Court does not find that he waived his right to this discovery. Moreover, even if this Court did not agree with plaintiff that he should be entitled to further discovery on this issue, the motion is denied on the other grounds set forth herein.

### F. Sanctions

In his responsive papers, plaintiff seeks an order imposing sanctions upon the defendants for raising arguments in the motion which had previously been rejected by Judge Levy—the arguments of mootness, failure to state a claim for retaliation, as well as for the Eleventh Amendment argument, which is frivolous on its face. Defendants have failed to respond to plaintiffs' motion and did not address the issue of sanctions in their reply papers.

Federal Rule of Civil Procedure 11 provides:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, 1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; 2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

Fed.R.Civ.P. 11(b). The Rule, which is designed to curb abusive litigation and deter baseless filings, *see Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 552, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991), contains a twenty-one-day "safe harbor" period in which the party may withdraw any frivolous or legal contentions. *See* Fed.R.Civ.P. 11(c)(1)(A); *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1327–28 (2d Cir.1995). Under the Rule, a litigant seeking sanctions must file the motion "separately from other motions or requests," Fed. R.Civ.P. 11(c)(1)(A), and must not file the motion with the court until he has afforded his adversary the twenty-one-day period in which to withdraw or modify his submissions. *See Bowler v. U.S. Immigration & Naturalization Serv.,* 901 F.Supp. 597, 604 (S.D.N.Y. 1995) (declining to impose sanctions under Rule 11(c)(1)(A) where the party was not afforded the twenty-one day safe harbor period). In addition, the Rule also provides that monetary sanctions may not be awarded against a represented party for frivolous legal arguments advanced by the party's attorney. *See* Fed.R.Civ.P. 11(c)(2)(A). Moreover, "[b]ecause Rule 11 sanctions should be imposed with caution," *Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir.1994) (citing *Rodick v. City of Schenectady,* 1 F.3d 1341, 1351 (2d Cir.1993)), the district court is afforded discretion in determining whether to impose sanctions for sanctionable conduct. *See* Fed. R.Civ.P. 11(c). In exercising this discretion, courts should "bear in mind that sanctions are not intended to 'chill an attorney's creative, imaginative or enthusiastic advocacy on his client's behalf.'" *Magnotta v. Berry,* No. 91 CV 0531, 1996 WL 11238, at *4 (S.D.N.Y. Jan. 5, 1996) (quoting *Kraemer Export Corp. v. Peg Perego U.S.A., Inc.,* No. 93 CV 0198, 1994 WL 86357, at *6 (S.D.N.Y. Mar.17, 1994)). *But cf., Levine v. F.D.I.C.,* 2 F.3d 476, 479 (2d Cir.1993) (holding that "the creativity of an attorney may not transcend the facts of a given case").

Here, certain aspects of defendants' motion are clearly frivolous. Although styled as a motion for summary judgment, defendants' motion to dismiss for mootness pursuant to Rule 12(b)(2), was in essence identical to the motion raised and decided by Judge Levy in his November 1, 1995 Report and Recommendation. The only additional fact that was presented to this Court, not previously presented to Judge Levy, was Mr. Davis' recent graduation from CUNY. This fact clearly has no relevance to Mr. Davis' monetary claims for damages and therefore fails to provide a "nonfrivolous" basis for seeking reversal of Judge Levy's prior report.

Similarly, the argument that plaintiff's retaliation claim fails adequately to allege a deprivation of Mr. Davis' constitutional rights is virtually identical to the argument raised previously before Judge Levy. Nothing presented to this Court even begins to suggest a non-frivolous reason for raising this issue again.

Finally, the argument that the Eleventh Amendment immunity bars suit against the defendants in their official capacity, while not previously raised before Judge Levy, is nevertheless frivolous on its face. Even a cursory review of the plaintiff's complaint demonstrates that the plaintiff seeks only monetary damages from these defendants in their individual capacities.

Sanctions for similar conduct have been imposed by courts finding that a party's insistence on rearguing the same motions previously decided constituted sanctionable conduct. *See, e.g., Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1254–55 (2d Cir.), *cert. denied*, 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992) (upholding the imposition of sanctions on a defendant who resubmitted a motion that had been previously denied); *Green v. Kadilac Mortgage Bankers, Ltd.*, 936 F.Supp. 108, 118 (S.D.N.Y.1996) (imposing sanctions on plaintiffs who "are intent on litigating the same issues over and over again" when they were previously decided); *Siderpali S.P.A. v. Judal Indus., Inc.*, 833 F.Supp. 1023, 1029 (S.D.N.Y.1993) (imposing sanctions where the defendants failed to present the court with any reason to overturn a prior order

denying the motion to dismiss and failed "to even acknowledge that the [prior] order addresses their contentions").

■ However, in this case, plaintiff did not submit the sanction request separately from his response to the summary judgment motion; indeed, it was buried in a two-page letter to this Court. Nor is there any evidence on the record that plaintiff served defendants with a demand to withdraw the motion prior to requesting sanctions. Failure to afford a party the twenty-one day safe-harbor period provided by the rule has resulted in the reversal of sanctions awards. *See, e.g., Hadges v. Yonkers Racing Corp.*, 48 F.3d at 1328. Similarly, failure to provide a separate statement indicating that a motion for sanctions is being filed or failing to adequately set forth the grounds for sanctions have also been the basis for denying a motion for sanctions. *See Weiss v. Weiss*, No. 91 CV 5115, 1997 WL 240715, at *2 (S.D.N.Y. May 9, 1997) (denying sanctions where the motion failed to " 'describe the specific conduct alleged to violate subsection b,' " and where the party was never afforded an opportunity to withdraw his application under the twenty-one day safe-harbor provision) (quoting Fed. R.Civ.P. 11(c)(1)(A); *Green v. Kadilac Mortgage, Bankers, Ltd.*, 936 F.Supp. at 118 n. 5) (denying sanctions for failing to include a separate statement in the notice of motion).

Accordingly, while this Court is disturbed by defendants' insistence on relitigating issues previously decided by Judge Levy, based on the record herein, and the posture in which the motion for sanctions comes before this Court, this Court concludes that sanctions would not be appropriate. However, this Court admonishes counsel for defendants to consider carefully any similar motions in the future.

**SO ORDERED.**